## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

BRENDA NORMAN BOOTH,

     Plaintiff,

v.                                Case No: 8:21-cv-1509-KKM-JSS

GTE FEDERAL CREDIT UNION,

     Defendant.

_____

### <u>ORDER</u>

     Defendant GTE Federal Credit Union moves to dismiss Plaintiff Brenda Booth's Amended Complaint. (Doc. 13.) GTE argues that Booth fails to provide enough facts to plausibly allege that GTE fired her in violation of the Americans With Disabilities Act (ADA), the Family Medical Leave Act (FMLA), or the Age Discrimination in Employment Act (ADEA). Booth concedes that GTE is correct as to Counts II and V, (Doc. 16 at 17), but maintains that the Amended Complaint alleges enough facts to state a claim for relief that is plausible on its face as to the other Counts. Upon review, this Court agrees with Booth. As to Counts II and V, GTE's motion to dismiss is granted, but it is denied for Counts I, III, IV, and VI.

## I.  BACKGROUND[1]

Brenda Booth worked full-time at GTE Federal Credit Union for twenty years. (Doc. 11 ¶¶ 15–16.) On June 16, 2020, Booth arrived to work and told her manager that she was tired. (*Id.* ¶ 22.) The manager suspected Booth had contracted COVID-19 and ordered her "to leave work immediately and not return until she could provide a negative COVID-19 test." (*Id.* ¶ 23.) In response to her manager's demand and her perceived illness, Booth applied for leave under the FMLA "while she was forced to quarantine." (*Id.* ¶ 26.) GTE approved her leave. (*Id.*) Booth's bout with COVID-19—even aside from her symptoms—"limited her major life activities" because "she was required to leave work and ordered to remain out of work on leave due to her symptoms." (*Id.* ¶ 25.)

Booth returned to work on July 6, 2020. (*Id.* ¶ 27.) GTE responded to Booth's return by issuing her "an unwarranted write-up." (*Id.*) On August 15, 2020, Booth and her husband went out for dinner and drinks at an establishment that is one of GTE's customers. (*Id.* ¶¶ 29–30.) At the end of the evening, they disputed with the owner over the bill. (*Id.* ¶ 31.) "Following this incident," the owner filed a customer complaint against Booth with GTE. (*Id.* ¶ 32.) Booth attempted to explain the situation to GTE, but to no avail. GTE, not following its usual process of progressive discipline, asserted that Booth had a drinking problem and fired her. (*Id.* ¶¶ 34–35.) GTE replaced Booth with a

---

[1] As it must, the Court treats the factual allegations in Booth's Amended Complaint as true and construes them in the light most favorable to her. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

"substantially younger employee." (*Id.* ¶ 38.) Booth is approximately 53-years old. (*Id.* ¶ 18.)

In the past, similarly situated GTE employees have not been fired for conduct worse than Booth's acts "outside of work, over the weekend, during her free time." (*Id.* ¶¶ 34, 36.) For example, an employee named "Yuri" took money from a member's account for his own use and GTE did not fire him. (*Id.* ¶ 37.) Besides the severity of their respective conduct, the difference between Yuri and Booth is that Yuri is approximately 38-years old and has not taken FMLA leave, (*id.* ¶¶ 36–37), while Booth is approximately 53-years old and has taken FMLA leave, (*id.* ¶¶ 18, 26).

Believing that GTE terminated her wrongfully, Booth filed a claim with the Florida Commission on Human Relations and the Equal Employment Opportunity Commission (EEOC). (*Id.* ¶ 9.) The EEOC reviewed Booth's charge and provided her with a Notice of Right to Sue on March 24, 2021. (*Id.* ¶ 11.)

Within ninety days of receiving that notice, on June 22, 2021, Booth sued GTE. (Doc. 1.) Booth filed an Amended Complaint on September 1, 2021. (Doc. 11). GTE moved to dismiss on September 15, 2021, (Doc. 13), and Booth responded on October 6, 2021, (Doc. 16).

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is plausible on its face when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.*

When considering the motion, a court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## III.   ANALYSIS

Booth's Amended Complaint advances six causes of action against GTE, all for the events surrounding her termination. Counts I and II allege that GTE's decision to fire

Booth discriminated against her based on her age and retaliated against her for an exercise of her statutory rights, all in violation of the ADEA. (Doc. 11 ¶¶ 43, 50.) Counts III and IV allege that GTE's decision to terminate Booth discriminated against her based on a perceived disability and retaliated against her for protected activity, violating the ADA. (*Id.* ¶¶ 58, 63.) Finally, Counts V and VI allege that GTE's termination decision interfered with Booth's ability to exercise her rights under the FMLA and retaliated against her for exercising those rights. (*Id.* ¶¶ 72, 81.) In its motion to dismiss, GTE argues that each of these Counts are deficient on factual and legal grounds. (Doc. 13.)

### A. Booth States a Claim for Age–Based Discrimination Under the ADEA

"The ADEA prohibits employers from discriminating against an employee who is at least 40 years of age because of that employee's age." *Buchanan v. Delta Air Lines, Inc.*, 727 F. App'x 639, 641 (11th Cir. 2018) (per curiam); *see Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015); *see also* 29 U.S.C. § 623(a)–(b). A prima facie case of age discrimination requires (1) that the plaintiff was between the ages of forty and seventy; "(2) that she was subject to adverse employment action;" (3) that a substantially younger person filled the position from which she was discharged; and "(4) that she was qualified to do the job." *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1359 (11th Cir. 1999)). However, the prima facie case for discriminatory employment decisions

"is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). This means that Booth need not "establish a prima facie age-discrimination case in order to survive a Rule 12(b)(6) motion to dismiss." *Buchanan*, 727 F. App'x at 642. Instead, Booth must "allege facts giving rise to an inference of disparate treatment" or intentional discrimination. *Caraway v. Sec'y, U.S. Dep't of Transp.*, 550 Fed. App'x 704, 710 (11th Cir. 2013). In other words, Booth must plausibly allege that GTE discriminated against her based on her age. *See Shah v. Orange Park Med. Ctr., Inc.*, No. 3:14-cv-1081, 2016 WL 4943925, at *4 (M.D. Fla. Sept. 16, 2016) (Howard, J.) (equating the inquiry with the *Twombly* and *Iqbal* plausibly requirement).

In Count I, Booth alleges that GTE fired her based on her age in violation of the ADEA. (Doc. 11 ¶¶ 41–46.) GTE moves to dismiss this Count, claiming that Booth failed to sufficiently allege that she was replaced by a younger employee, or that other similar employees were treated better because they were younger. GTE is mistaken.

Booth's complaint "provide[s] enough factual matter to plausibly suggest intentional discrimination." *Buchanan*, 727 F. App'x at 641. Indeed, GTE does not contest that Booth alleges that she is in the age bracket protected under the ADEA, that GTE fired her, or that she was qualified to do the job. (Doc. 13 at 5.) GTE only disputes one element of the prima facie case: "whether or not Plaintiff was replaced by a younger individual or whether she was treated less favorable than a similar situated, substantially younger person." (*Id.*)

6

But Booth alleges that she "was replaced by a substantially younger employee." (Doc. 11 ¶ 38.) She also alleges that other GTE employees "under the age of 40" were not fired for worse misconduct than that cited as a reason for firing her. (*Id.* ¶ 36.) To the extent that statement is conclusory, Booth backs it up with an example. She cites Yuri, an approximately 38-year-old GTE employee who took money from a member's account for his own use, yet was not fired. (*Id.* ¶ 37); *see Reed v. Forney Indus., Inc.*, 800 F. App'x 782, 786 (11th Cir. 2020) (holding that "an age difference of seven years is sufficient" for an employee to be substantially younger (citing *Liebman*, 808 F.3d at 1298)). Taking these allegations as true and drawing every reasonable inference in her favor, Booth plausibly alleges that GTE treated similar employees differently based on age and replaced Booth with a substantially younger employee. *See Buchanan*, 729 F. App'x at 642 (observing that a plaintiff need only "allege[] facts adequate to raise her right to relief above a speculative level" at the pleading stage).

However, even if Booth had not identified comparators or alleged that she was replaced by a substantially younger employee, that would not necessarily be fatal. *See Swierkiewicz*, 534 U.S. at 512 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). Booth need not establish a prima facie case at the pleading stage. She need only advance a plausible claim that GTE discriminated against her based on her

age. Drawing all reasonable inferences in her favor, Booth has done so and, thus, states a plausible claim in Count I.

### B. Booth Alleges Disability Discrimination in Violation of the ADA

The prima facie case of disability discrimination under the ADA requires a plaintiff allege (1) that she was disabled, (2) that she was qualified for the job, and (3) that her employer is a covered entity and discriminated against her because of the disability. *See Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000); *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam). Once again, the prima facie case for disability discrimination "is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510; *see Surtain*, 789 F.3d at 1246.

In Count III, Booth brings a claim for disability discrimination in violation of the ADA. (Doc. 11 ¶¶ 54–61.) Specifically, Booth alleges that GTE perceived that Booth had a serious disability due to her COVID-19 symptoms[2] and violated the ADA by terminating her for the perceived disability. (*Id.* ¶¶ 19, 22–26.) In its motion to dismiss, GTE only contests the third element of the prima facie case, whether Booth sufficiently alleges a disability under the ADA.

---

[2] An initial read of the Amended Complaint left one wondering if the disability was COVID-19 or something else. GTE apparently understood it was the former; it merely argues that COVID-19 is not a disability under the ADA, not that she failed to identify the alleged disability or impairment. So too, Booth's response treats COVID-19 as the only impairment GTE allegedly perceived. (Doc. 16 at 6–13.)

The ADA defines "disability" to include: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The ADA directs courts to construe "disability" in "favor of broad coverage of individuals" to the "maximum extent permitted by the terms" of the statute. *Id.* § 12102(4). Accordingly, Courts have noted that the bar to be considered "disabled" under the ADA is not a high one. *See, e.g., Mazzeo v. Color Resols. Int'l, LLC*, 746 F.3d 1264, 1268 & n.2 (11th Cir. 2014) (explaining that Congress instructed that "the establishment of coverage under the ADA should not be overly complex nor difficult" (quoting H.R. Rep. No. 110-730, at 9 (2008))). For an employee alleging that an employer "regarded" her as impaired, she need not prove that the impairment—in actuality or perception—limits a major life activity. *See* § 12102(3)(A). That said, it does not "apply to impairments that are transitory and minor," defining a "transitory impairment" to mean one with an "actual or expected duration of 6 months or less." *Id.* § 12102(3)(B). Thus, "an employee has a 'disability' under the ADA when that employee actually has, or is perceived as having, an impairment that is not transitory and minor." *EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019).

Booth alleges that she told her manager at GTE that "she felt tired." (Doc. 11 ¶ 22.) Relying on this admission, her manager suspected that Booth was ill with COVID-19 and

"ordered [Booth] to leave immediately and not return until she could provide a negative COVID-19 test." (*Id.* ¶ 23.) Booth did not return to work for almost a month. (*Id.* ¶ 27.) Thus, Booth has plausibly alleged that GTE perceived that she had COVID-19. And she further alleges that COVID-19 is a "serious illness [that] can have long term health effects on those infected with the virus." (*Id.* ¶ 24.) Together, Booth plausibly alleges that GTE perceived that Booth had COVID-19, "an impairment that is not transitory and minor," *STME, LLC*, 938 F.3d at 1315; *see Buford-Clark v. Birmingham Bd. of Educ.*, No. 2:14-cv-2108, 2015 WL 225464, at *4 (N.D. Ala. Jan. 16, 2015) (defining the inquiry as whether "the defendant took a prohibited action . . . because of a perceived impairment").

GTE disagrees, asserting that Booth has not alleged enough facts to survive a motion to dismiss. (Doc. 13 at 10.) But a plaintiff need only provide "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2); *see Cheatham v. Augusta-Richmond Cnty.*, CV 116-104, 2017 WL 78569, at *5 (S.D. Ga. Jan. 9, 2017) (describing the "very low bar" a plaintiff must cross at the motion to dismiss stage of an ADA claim). Booth has done that. GTE's main argument is that COVID-19 is not an ADA qualifying disability or impairment, so GTE could not have perceived Booth as disabled. (Doc. 13 at 8–11.) But this argument is misplaced, particularly as GTE relies on outdated legal standards in making its arguments.

GTE misstates the legal requirements for a "regarded as" claim. GTE relies upon an Eleventh Circuit opinion from 1999, holding that the impairment must be perceived to substantially limit a major life activity. *See Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999). But the ADA, amended in 2008, now explains that an "individual meets the requirement of 'being regarded as having such an impairment'" if she was fired "because of an actual or perceived physical or mental impairment *whether or not* the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (emphasis added); *see Dulaney v. Miami-Dade Cnty.*, 481 F. App'x 486, 489 n.3 (11th Cir. 2012) ("In 2008, Congress . . . . changed the definition of 'disability' such that being 'regarded as' having a disability no longer requires a showing that the employer perceived the individual to be substantially limited in a major life activity." (citing 42 U.S.C. § 12102(3)(A))). This "more liberal standard" makes "it significantly easier for a plaintiff to show disability." *Coker v. Enhanced Senior Living, Inc.*, 897 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012). Like the case on which it relies, much of GTE's argument is displaced by the ADA amendment.

As stated above, the proper test is not whether Booth suffered a disability with "restrictions that impact a major life activity." (Doc. 13 at 8.) Instead, the test is whether Booth plausibly alleges that GTE perceived her as impaired, regardless of whether that impairment impacts a major life activity. *See* § 12102(1)(C); *EEOC v. Am. Tool & Mold,*

*Inc.*, 21 F. Supp. 3d 1268, 1275 (M.D. Fla. 2014) (Scriven, J.) ("The relevant inquiry in such cases is not the plaintiff's actual condition, but how the Defendant 'perceived [his] condition, including the reactions and perceptions of the persons interacting with or working with him.'" (quotation omitted)). Booth satisfied that far less demanding standard. She alleges that her employer immediately sent her home because she exhibited a symptom of COVID-19 and would not allow her to return until she submitted a negative COVID-19 test. *See Cheatham*, 2017 WL 78569, *4 (concluding that plaintiff stated a plausible claim under the ADA when she alleged that defendant "took an adverse employment action very soon after learning of her need for time off" for a medical issue); *cf. Hammonds v. Dolgencorp, LLC*, No. 4:14-cv-0067, 2015 WL 12591769, at *7 (N.D. Ga. Oct. 19, 2015) (granting defendant summary judgment on plaintiff's regarded as claim because plaintiff failed to present evidence that defendant knew of the condition). A reasonable inference from this reaction is that GTE perceived that Booth had COVID-19, that COVID-19 impaired Booth's ability to perform her employment responsibilities while physically at work, and that COVID-19 presented a non-transitory and non-minor impairment. *Cf. Martin v. Estero Fire Rescue*, No. 2:13-cv-393, 2014 WL 3400974, at *5 (M.D. Fla. July 11, 2014) (Steele, J.) (granting summary judgment because there was no evidence in the record that defendant knew of plaintiff's alleged condition before firing him).

Of course, not all impairments qualify under the ADA. *See Black's Law Dictionary* (11th ed. 2019) (defining "impairment" as the "condition of being damaged, weakened, or diminished"). The ADA expressly excludes "transitory *and* minor" impairments. § 12102(3)(B) (emphasis added). The plain meaning of "and" requires both aspects be present. *Id.*; *see also* 29 C.F.R. § 1630.15(f) ("To establish this defense, a covered entity must demonstrate that the impairment is both 'transitory' and 'minor'"); *but see Lewis v. Fla. Default L. Grp., P.L.*, No. 8:10-cv-1182, 2011 WL 4527456, at *6 n.23 (M.D. Fla. Sept. 16, 2011) (Whittemore, J.) (noting confusion on "whether the "transitory and minor" phrase should be read conjunctively and/or whether conditions that are transitory are also, in most cases, minor"). The ADA defines a transitory impairment as one lasting less than six months. *See* § 12102(3)(B). But it does not separately define "minor." As a result, the perceived impairment's severity is an objective—and factual—inquiry. *See Nevitt v. U.S. Steel Corp.*, 18 F. Supp. 3d 1322, 1331 (N.D. Ala. 2014); *see also* 29 C.F.R. § 1630.15(f) ("Whether the impairment at issue is or would be 'transitory and minor' is to be determined objectively."). Since GTE gets the test wrong, it does not argue that COVID-19 is a "transitory and minor" impairment. But even if this Court construes GTE's arguments on the severity of COVID-19 that way, they would not be persuasive at this juncture.

First, whether an impairment is "transitory and minor" is a quintessential question of fact that courts usually do not address at the pleading stage. *See, e.g., Lisby v. Tarkett*

*Ala., Inc.*, No. 3:16-cv-01835, 2020 WL 1536386, at *5 (N.D. Ala. Mar. 31, 2020) (using expert testimony to evaluate whether a jury could conclude that an impairment was "transitory and minor" at summary judgment); *Mayorga v. Alorica, Inc.*, No. 12-21578-CIV, 2012 WL 3043021, at *9 n.2 (S.D. Fla. July 25, 2012) (Huck, J.) (collecting cases and observing that whether an impairment is minor is not usually decided before summary judgment); *Henson v. City of Atlanta*, No. 1:17-cv-3024, 2019 WL 12426046, at *11 (N.D. Ga. June 18, 2019) (denying summary judgment because, "[v]iewing the facts in the light most favorable to [plaintiff], there is at least some evidence from which a reasonable jury could conclude that [defendant] perceived [him] to be impaired" (quotation omitted) (alternations in original)). To the extent facts are in dispute at the pleading stage, courts are to "take the factual allegations in the complaint as true." *Pielage*, 516 F.3d at 1284. And Booth alleges that COVID-19 is a "serious illness [that] can have long term health effects on those infected with the virus." (Doc. 11 ¶ 24); *cf. Hammonds*, 2015 WL 12591769, at *8 (holding plaintiff could not establish at the summary judgment stage a regarded as claim because plaintiff put forward "no evidence that anyone expected" any impairment to last more than six months). This allegation raises a "plausible inference" that GTE perceived Booth to be impaired by COVID-19, an impairment that might not be both transitory and minor. *Iqbal*, 556 U.S. at 679; *see STME, LLC*, 938 F.3d at 1315.

Second, finding as a matter of law that an impairment is transitory and minor without a developed record is particularly ill fitting to COVID-19, a novel and debated illness that may vary widely in severity from person to person and of which the long-term effects remain unclear. *See Lewis*, 2011 WL 4527456, at *5 (granting summary judgment because plaintiff could not *prove* that defendant perceived plaintiff to be seriously impaired from H1N1). Even the federal judiciary is not in agreement about COVID-19. *Compare Champion v. Mannington Mills, Inc.*, ___ F. Supp. 3d ___, 2021 WL 2212067, at *5 (M.D. Ga. 2021) (explaining that it would be absurd to hold that workers who contracted COVID-19 were "disabled"), *with Matias v. Terrapin House, Inc.*, No. 5:21-cv-02288, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021) (citing agency guidance to conclude that COVID-19 may be an ADA disability as it is not always transitory and is not minor). Making that determination is even less appropriate in this action since one party has failed to address the correct legal standard for a "regarded as" claim. Simply put, COVID-19 is not so obviously transitory and minor that Booth's claim must fail as a matter of law.

Finally, a number of lower courts agree with the EEOC that the "transitory and minor" language is a defense for which the defendant bears the burden, rather than an element of the plaintiff's pleading requirement. *See Nevitt*, 18 F. Supp. 3d at 1332; *Mayorga*, 2012 WL 3043021, at *8; *Green v. ADCO Int'l Plastics Corp.*, No. 1:17-cv-337, 2017 WL 8810690, at *10 (N.D. Ga. Dec. 27, 2017), *report and recommendation*

*adopted*, 2018 WL 739794 (Feb. 7, 2018); *see also* 29 C.F.R. § 1630.15 (including transitory and minor among "defenses to an allegation of discrimination"). Booth need not rebut GTE's defenses in her Amended Complaint. Moreover, Booth need not establish a prima facie case at the pleading stage. *See Swierkiewicz*, 534 U.S. at 512 ("Given that the prima facie case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases."). She need only advance a plausible claim that GTE terminated her based on a perceived impairment. Drawing all reasonable inferences in her favor, Booth has done so.

Therefore, Booth plausibly alleges that GTE regarded her as having COVID-19, and that COVID-19 is an "impairment" that is not transitory and minor.

## C. Booth Sufficiently Alleges ADA and FMLA Retaliation Claims

The ADA and FMLA prohibit covered employers from retaliating against employees who engage in protected activity. *See* 42 U.S.C § 12203(a) (ADA retaliation); 29 U.S.C. § 2615(a)(2) (FMLA retaliation). The prima facie case under either statute is the same.[3] *See Batson v. Salvation Army*, 897 F.3d 1320, 1329–29 (11th Cir. 2018). A plaintiff must allege (1) that she engaged in protected activity under the statute, (2) that she suffered an adverse employment action, and (3) a causal connection between the

---

[3] The analysis is also the same as for Title VII retaliation claims. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997) (observing that the Eleventh Circuit "assess[es] ADA retaliation claims under the same framework we employ for retaliation claims arising under Title VII").

protected acts and the adverse employment action. *Id.* (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006)). Like the previous claims, the prima facie case for retaliation under these statutes is an evidentiary standard, not a pleading standard. *See Monroe v. Fla. Dep't of Corr.*, 793 F. App'x 924, 928 (11th Cir. 2019). Accordingly, Booth need raise only a plausible inference of retaliation at this stage. *See Swierkiewicz*, 534 U.S. at 510–13.

In her Amended Complaint, Booth alleges that GTE retaliated against her in violation of the ADA (Count IV) and the FMLA (Count VI). To support its motion to dismiss, GTE makes two arguments. First, GTE argues that the ADA retaliation claim must fail because Booth does not allege protected activity under the statute. (Doc. 13 at 13–15.) Second, GTE argues that Booth has not established a causal connection between her protected activity and her termination. (*Id.* at 15–16.) GTE is incorrect.

### i. Booth Alleges That She Engaged in Protected Activity under the ADA

Under the ADA, a protected activity includes "a request for a reasonable accommodation." *Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016); *see also Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367–68 (11th Cir. 2000) (treating a request for an accommodation under the FMLA as a protected activity). And although the Eleventh Circuit has yet to specify "precisely what form a request for an accommodation must take," *Adigun v. Express Scripts, Inc.*, 742 F. App'x 474, 476 (11th Cir. 2018) (quoting *Holly v.*

*Clairson Indus., L.L.C.*, 492 F.3d 1247, 1261 n.14 (11th Cir. 2007)), the duty to provide an accommodation "is not triggered unless a specific demand for an accommodation has been made," *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). A request for medical leave can qualify as a reasonable accommodation, provided it is not of an indefinite length. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003).

GTE argues that Booth has not alleged a protected act under the ADA, but GTE is mistaken. Booth alleges that she asked for leave under the FMLA while she had to stay home after GTE suspected she had COVID-19. (Doc. 11 ¶ 26.) This request for a brief medical leave during the period of her COVID-19 quarantine was a request for a reasonable accommodation due to Booth's actual or perceived disability. Accordingly, Booth engaged in protected activity under the ADA.

### ii.    Booth Alleges a Causal Nexus Between Her Protected Acts and Her Termination

In addition to protected activity and an adverse employment action, the prima facie case "requires a showing of but-for causation." *Frazier-White*, 818 F.3d at 1258. The bar is not a high one. A "plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). A plaintiff can satisfy this element by alleging that her employer knew of her

protected acts and "that there was a close temporal proximity between this awareness and the adverse . . . action." *Id.* (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.3 (11th Cir. 2003)). Temporal proximity between protected acts and termination is generally "sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Hurlbert*, 439 F.3d at 1298 (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)). The Eleventh Circuit has held that "a period as much as one month . . . is not too protracted." *Higdon*, 393 F.3d at 1220.

Notwithstanding GTE's assertions to the contrary, Booth meets this less-than-demanding standard. Booth asked for an accommodation in the form of her request for FMLA leave. (Doc. 11 ¶ 26.) GTE knew of this request and indeed granted it. (*Id.*) GTE fired Booth less than two months after her request for leave, and under a month after she returned to work. (*Id.* ¶¶ 22, 27–28, 35); *see Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (holding that a seven-week gap is "sufficiently proximate to create a causal nexus"). GTE also issued Booth "an unwarranted write-up" shortly after her return. (*Id.* ¶ 27.) Therefore, Booth alleges that GTE knew of her protected expression shortly before its decision to issue Booth a write-up and to terminate her employment. Though these allegations do not prove retaliation, they are "enough to establish a prima facie case of retaliation." *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021).

Accordingly, GTE's arguments to dismiss these Counts fail. Booth has sufficiently alleged the prima facie case for retaliation under the ADA and FMLA.

### D. Booth Concedes that Count II and Count V Should be Dismissed

Booth's Amended Complaint brings two additional counts that this Order has not addressed. In Count II, Booth alleges that GTE retaliated against her in violation of the ADEA. (Doc. 11 ¶ 49.) And Count V alleges that GTE interfered with an exercise of Booth's rights under the FMLA. (*Id.* ¶ 72.) GTE argues these Counts fail to state a claim upon which relief can be granted. (Doc. 13 at 11, 13.) It appears Booth agrees. In her response to the motion to dismiss, she makes no defense of these Counts. Instead, she "seeks leave to remove Count II (Retaliation under the ADEA) and Count V (Interference under the FMLA)" by way of amendment. (Doc. 16 at 17.) While the gesture is appreciated, this Court adopts the more direct approach. GTE's motion to dismiss Counts II and V is granted.

## IV.   CONCLUSION

As explained above, Booth alleges sufficient facts to state a claim for relief under Counts I, III, IV, and VI. But, as Booth concedes, Counts II and V are not viable under the Amended Complaint's allegations.

Accordingly, the following is **ORDERED**:

1.     Defendant's Motion to Dismiss Counts I, III, IV, and VI (Doc. 13) is

**DENIED**.

2.     Defendant's Motion to Dismiss Counts II and V is **GRANTED**.

**ORDERED** in Tampa, Florida, on November 20, 2021.

Kathryn Kimball Mizelle
United States District Judge